## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## HELENA DIVISION

MICHAEL ANTONELLI
Reg. # 04053-164                                                                                                    PLAINTIFF

V.                                             2:08CV00065 SWW/HDY

MARK TIPTON, Unit manager, FCI-Forrest City; Mr. SMITH,
SHU Lt., FCI-Forrest City; PATTERSON, Drug Treatment
Specialist, FCI- Forrest City; ALISON MARIE RUSK-
LUEKEFELD, RDAP Coordinator, FCI-Forrest City; MARTHA
DePOORTER, Correctional Counselor, FCI-Forrest City; PEEVEE,
Education Secretary, FCI-Forrest City; PRITKIN, Commissary
Officer, FCI-Forrest City; J. CARROLL, Assistant Health Services
Administrator, FCI-Forrest City; RICK MARQUEZ, Captain, FCI-Forrest City;
LT. WARD, FCI-Forrest City; G. SHAVER, Drug Treatment Specialist,
FCI-Forrest City; GAUCHER, Property Officer, FCI-Forrest City;
WANZER, Lt., FCI-Forrest City; GARCIA, Correctional Officer,
FCI-Forrest City; USA; and P. McBRIDE, Trust Fund Supervisor,
FCI-Forrest City                                                                                                    DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and

1

recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.
2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

**DISPOSITION**

Plaintiff, a prisoner at the Federal Correctional Institute in Memphis, previously housed at Forrest City, filed a *pro se* Complaint (docket entry #1) pursuant to *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)[1] and the Federal Tort Claims Act, 28 U.S.C. §

---

[1] In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397, 91

2671. A three-striker, Plaintiff has paid his filing fee and has obtained leave of the Court prior to filing his claims, as he has been required to do as a result of an Order entered in *Antontelli v. Sanders et al.*, 2:06CV00117 JLH/JFF.[2]

## I. Screening

The PLRA requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that: (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(A)(b).

An action is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). In reviewing a *pro se* complaint under §1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction. *Haines v.*

---

S.Ct. 1999, 29 L.Ed.2d 619 (1971), the United States Supreme Court allowed a plaintiff to seek money damages from federal officials for alleged violations of rights secured by the Constitution and laws of the United States. "An action under Bivens is almost identical to an action under section 1983, except that the former is maintained against federal officials while the latter is against state officials." *Christian v. Crawford*, 907 F.2d 808, 810 (8th Cir.1990).

[2] This case is a companion to *Antonelli v. Luekefeld et al.*, 2:07CV00118 BSM/JTR, and *Antonelli v. Marquez*, 2:08CV00003 JMM/HDY, which were filed with the prior permission of Chief Judge J. Leon Holmes. Plaintiff has been previously barred from filing any cause of action in this Court (and many others, including the United States Supreme Court) without first obtaining leave of the Court.

*Kerner*, 404 U.S. 519, 520 (1972). The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. *Denton v. Hernandez*, 112 S.Ct. 1728, 1733 (1992); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). But regardless of whether a plaintiff is represented or appearing *pro se*, his complaint must allege specific facts sufficient to state a claim. *See Martin v. Sargent*, 780 F .2d 1334, 1337 (8th Cir.1985).

## II. Factual Background

Plaintiff first raised most of the claims set forth in the instant action in another case filed on March 6, 2006 – *Antontelli et al. v. Depoorter et al*., 2:06CV00061 WRW. At one point, that case encompassed twenty-seven known Defendants, ten Doe Defendants, sixty-three handwritten pages, and four separate motions to consolidate four previously dismissed and closed *habeas corpus* cases with it. The case was ultimately dismissed without prejudice as frivolous and for failure to prosecute, and the judgment was affirmed on appeal.

On September 10, 2007, Plaintiff submitted *Antonelli v. Luekefeld et al*., case number 2:07CV00118 BSM/JTR, accompanied by a motion requesting prior permission from the Court to file the action pursuant to *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and the Federal Tort Claims Act. In an Order dated October 11, 2007 (docket entry #4), Chief Judge Holmes (to whom the case was originally assigned) granted Plaintiff permission to file an Amended Complaint, not the seventy-eight count original version which alleged that all wrongs were "part of a scheme to retaliate against him for filing numerous grievances and lawsuits . . ." *Id.* at p. 4. Judge Holmes found that the original version of the complaint was "an apparent attempt to circumvent the Court's May 16, 2006 Order and Judgment, which prevents him from refiling any claims that have been adjudicated on the merits . . . ." *Id*. at p. 3.

Plaintiff was given specific instructions for the preparation of his Substituted Complaint: he could raise **no more than ten retaliation claims** that were related in time and subject matter, naming as Defendants only those personally involved in those ten retaliation claims, explaining specifically how each of those Defendants retaliated against Plaintiff, and seeking only appropriate relief.  Still objecting strenuously, Plaintiff did file a Substituted Complaint (docket entry #6), naming thirty-one Defendants plus other Does "presently unknown." Upon screening this complaint, the Magistrate Judge found that it "contain[ed] a jumble of unrelated claims that arise during different time frames and involve numerous different Defendants.  Given the convoluted and disparate nature of these unrelated claims, the Court concludes that it would be impossible for the parties to complete discovery, file appropriate motions, and present the case to a jury in a coherent fashion."  Therefore, the Court found, Plaintiff would be allowed to proceed in that case only with those claims that related to his allegations of retaliatory removal from certain prison programs at the FCI-FC unit, and dismissed the remainder of his claims, without prejudice to his right to re-file them in a separate cause of action.

The instant cause of action is what Plaintiff has described as the "final tentacle of the trifurcated claims" of what was "left over" from the first two lawsuits (docket entry #1).  Most of the claims raised in this Complaint have already been addressed by Chief Judge Holmes in his October 11, 2007 Order which directed Plaintiff to file the Substitute Complaint in *Antontelli v. Luekenfeld et al*., 2:07CV00118 BSM/JTR and noted to be frivolous, or exceed the scope of that Order.  They will, accordingly, be recommended for dismissal.

### III.  Analysis

**A.  Claims A - C**

In his first three claims, Plaintiff attempts to state claims pursuant to *Bivens* and the FTCA against Defendants Luekefeld, Patterson, Tipton, and the U.S.A., for damages of $3,000,000.36, for improperly instructing him as to how to make his bed and keep his quarters neat.  He accuses them of failing in their "duty" to treat him "fair and just," causing him to be "embarrassed, demeaned, degraded, taunted, and retaliated against, and suffered agony and distress and personal injury," with the intention of "aggravat[ing] Plaintiff" and "deter[ing] him from filing administrative remedy grievances."   In his October 11, 2007 Order, Chief Judge Holmes noted that this claim specifically was "frivolous and does not approach the level of a constitutional violation."  *See* docket entry #4.  Plaintiff has not suffered any injury as a result of these alleged "wrongs."  Generally, verbal abuse and threatening conduct is not actionable under § 1983, or by implication, pursuant to *Bivens*.  *See Martin v. Sargent*, 780 F.2d at 1338.   The Eighth Circuit has held that a threat amounts to a constitutional violation only when it is so brutal or wantonly cruel as to shock the conscience.  *See Burton v. Livingston*, 791 F.2d 97 (8th Cir. 1986).  That is not the case here.  It is not sufficient to state a claim to allege that one has been threatened with injury; Plaintiff must have actually suffered a specific and concrete injury as a result of the action of Defendants.

Furthermore, Plaintiff has not alleged that he was disciplined, nor that he was deprived of any constitutional rights, only conclusory allegations of "retaliation" and "discrimination."  A retaliation claim generally has three elements: 1) the prisoner engaged in protected conduct; 2) an adverse action was taken against the prisoner that would deter a person of ordinary firmness from continuing to engage in that conduct[3]; and 3) a causal connection exists between the first two

---

[3] It certainly does not appear from the voluminous record of grievances and appeals that Plaintiff was in any way deterred from continuing to engage in the conduct of seeking his administrative

elements, i.e., the prisoner's protected conduct motivated at least in part the adverse action. *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir.2007)(*citing Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004), *cert. denied,* 546 U.S. 860 (2005)). Because there has been no allegation of injury or actual retaliation, the Court recommends a finding that Plaintiff has failed to state a claim as to these issues.

### B. Claims D - E

Here Plaintiff seeks damages of $2 million against Defendant Leukefeld and the U.S.A. on the grounds that Defendant Luekefeld "retaliated" against him for filing grievances by requiring him to write a six-page essay "as to why he filed his petitions for redress." It is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable even if the act when taken for a different reason, would have been proper. *Craft v. Wipf*, 836 F.2d 412, 419 (8th Cir.1987), *quoting Buise v. Hudkins*, 584 F.2d 223, 229 (7th Cir.1978), *cert. denied*, 440 U.S. 916 (1979). Our Court of Appeals has frequently reiterated that prison officials can be held liable for actions taken against a prisoner, if the purpose of such actions is to punish the prisoner for exercising his or her constitutional rights. According to the exhibits submitted by Plaintiff in support of his claims, Defendant Luekefeld assigned Plaintiff to "produce a written response to the question: "Give me three reasons why your legal filings is interfering with your treatment [sic]?"

This claim echoes the analysis above in the absence both of a truly "adverse action" necessary to support a retaliation claim, as well as the lack of any actual injury. Plaintiff has failed here to allege facts sufficient to state a claim for retaliatory discipline, and this, too, should be dismissed.

### C. Claims F - G

Here, Plaintiff seeks to raise *Bivens* and FTCA claims alleging that Defendant DePoorter

---

remedies. In fact, according to one appeal response from National Inmate Appeals Administrator Harrell Watts, between October 2005 and April 2006, Plaintiff filed 223 remedy requests (58% of all the remedies filed at FCI-FC by all the inmates since Plaintiff was committed to that facility). *See* docket entry #3, 5-G.

7

caused Defendant Peevee to "harass, intimidate, and obstruct Plaintiff in his ordinary daily affairs in the legal library" at the FCI-FC unit, in retaliation for Plaintiff's filing of administrative grievances against Defendant DePoorter. Although the Complaint itself is bare of further details, the Exhibits accompanying it reveal that Plaintiff has complained that Defendant Peevee said, "Dahhh, you're in prison," to him, in front of other inmates, which Plaintiff found to be "demeaning and embarrassing." Plaintiff has also grieved that she waits to refill the copy machine with paper until just before the law library is about to close, then berates him for complaining.

As Chief Judge Holmes noted in his October 11th Order, Plaintiff has attempted to evade the restrictions of this Court's previous filing restrictions by couching his claims in terms of a "scheme to *retaliate* against him for filing numerous grievances and lawsuits" (emphasis in original). Even so, however, Plaintiff must still allege that some actual injury occurred in order to state a claim for relief; in the absence of a retaliatory act or injury, there can be no retaliation claim. Again, verbal threats, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension. *See McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir.1993)(inmate's claims of general harassment and of verbal harassment were not actionable under § 1983 ); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir.1987)(verbal threats and abuse by jail officials did not rise to the level of a constitutional violation). Nothing in Plaintiff's Complaint against Defendants DePoorter or Peevee provides sufficient facts to state a claim for relief that is plausible on its face, and these claims should be dismissed as well.

### D.  Claim H

Plaintiff next alleges that he was "compelled" by Defendants DePoorter, Luekefeld and Tipton to store his legal and personal belongings in an unsecured area because they refused to provide him with a locked storage container, causing unspecified property to be stolen. He seeks damages of $1 million, on the grounds that the actions of the Defendants were deliberate and in

retaliation for his filing grievances against them. Typically when a *pro se* litigant has raised such a vague sort of allegation, the Court will direct the plaintiff to file an amended complaint explaining exactly what type of property was missing and, in the case of legal materials, what specific legal harm, in the way of a denial of access to the courts, was created by the loss. Plaintiff has been raising a variation of this claim since 2006, and has had at least three opportunities to plead enough facts to state a viable claim. In fact, in the Order that this Court entered in the second case of this "triumvirate," Plaintiff was instructed that in order to state a claim for loss of property he must "specifically describe his lost possessions, and their monetary value, in order to state a claim for damages for their loss." Plaintiff received this instruction well before this Complaint was filed, and has been given numerous "bites at the apple" in this Court in both *habeas* and *Bivens* actions filed since 2005 to adequately frame these issues. Particularly with regard to a claim of lost legal materials, a plaintiff must show actual injury, such as demonstrating that a nonfrivolous legal claim has been frustrated or was being impeded. *Walton v. Toney*, 44 Fed. Appx. 49, 2002 WL 1941590 (8th Cir. August. 21, 2002). In light of Chief Judge Holmes's explicit direction that Plaintiff's claims in this round of litigation be limited solely to those related to true issues of retaliation for the exercise of a constitutional right, the undersigned recommends that Plaintiff's vague and conclusory claims of property loss be dismissed for failure to state a claim and as outside the scope of the Court's limiting Order.

**E. Claims I - J**

Here, Plaintiff alleges that "an unknown person breached the confidentiality policy of the BOP and leaked information to Alison Luekefeld who then retaliated against [Plaintiff] for having filed administrative grievances." From the Exhibits accompanying the Complaint, the "confidential" information revealed to Defendant Luekefeld seems to be that Plaintiff had filed two BP-9 grievances in the same week. He seeks damages from both Defendant Luekefeld and this unknown

9

person, although there are no Doe defendants named in this action. While he asserts that the defendants retaliated against him for the grievances he filed, Plaintiff does not describe any retaliatory conduct or offer any facts whatsoever to support this bare assertion. Such conclusory allegations are insufficient to show that the defendants, whatever their actions may have been, were motivated by the exercise of Plaintiff's First Amendment rights, and bare allegations of malice on the Defendants' part are not enough to establish retaliation claims against them. *See Crawford-El v. Britton*, 523 U.S. 574, 588 (1998).

### F. Claims K - L

Plaintiff now claims that Defendant Pritkin, who is apparently the commissary manager, retaliated against Plaintiff "for filing grievances against [Pritkin's] coworkers" by refusing to allow Plaintiff to buy stamps and legal supplies, thereby denying him access to the Courts. Plaintiff adds that Defendant Pritkin owed Plaintiff a "duty to abide by the BOP Standards of Employee Conduct and failed to perform that duty owed the Plaintiff." Neither of these plead sufficient facts to state a claim. Plaintiff has not alleged that Defendant Pritkin was involved in or affected by his grievances and appeals, and fails to allege any facts upon which a retaliatory *animus* could be inferred on Pritkin's part. *See e.g., Atkinson v. Bohn*, 91 F. 3d 1127 (8th Cir. 1996). Nor has Plaintiff indicated what harm he has suffered in the way of actual injury as a result of this alleged denial of access to the courts, as required by *Lewis v. Casey*, 518 U.S. 343, 350-53 (1996), or any explanation whatsoever of this supposed "duty" owed to Plaintiff under the BOP employee conduct codes.

### G. Claims M - P, and U - V

In this series of claims, Plaintiff alleges that Defendant Carroll, the assistant health services administrator, "refused" to provide Plaintiff with corrective eyeglasses and dentures. For this Plaintiff seeks damages of over $2 million.

Plaintiff is a restricted filer. He was granted leave by the Chief Judge of this Court to

10

proceed with only ten claims of retaliation related in time and subject matter. The Court has granted Plaintiff sufficient latitude that this narrow limitation has escalated to three separate cases encompassing far more than ten claims of retaliation. Plaintiff was specifically directed that any additional claims should be filed in <u>separate actions</u>, which would also require prior permission of the Chief Judge. These claims of deliberate indifference clearly fall within the ambit of "additional claims" and should be dismissed as exceeding the scope of the Court's grant of permission outlined in its October 11th Order.

### H. Claims Q, R, Y, Z, and AA - BB

The same is true of the allegations raised in the next string of facts pleaded by Plaintiff, all of which involve an alleged denial of access to the Court based on the failure to issue Plaintiff his legal property in a timely manner, delays in mailing his correspondence, or inadequate access to stationery supplies. These are claims unrelated to issues of retaliation and therefore exceed the scope of the permission granted to Plaintiff by the Chief Judge in his permission to litigate in this Court. Furthermore, notwithstanding Plaintiff's contentions in his grievance forms that comprise his exhibits, this Court's own records fail to show any prejudice to Plaintiff's legal activities in this district.

For instance, although Plaintiff claims that during the time he was segregated in the Special Housing Unit from March 2, 2006 until May 15, 2006 he could not obtain sufficient pens, envelopes, stamps, or the use of a typewriter to adequately pursue his legal activities, this Court's docket entries reflect that: 1) In *Antonelli v. Sanders*, 2:05CV00314 WRW, a *habeas* action, Plaintiff submitted six pleadings during that time period; 2) On March 6, 2006, Plaintiff filed *Antonelli v. Does*, 2:06CV00061 WRW, a *Bivens* action, and submitted eleven additional pleadings in that case before he was released from SHU and moved to another facility; and 3) filed *Antonelli v. Sanders*, 2:06CV00117 JLH, another *habeas* action, on May 1, 2006. This list does not include the activity

in Plaintiff's cases in the Eighth Circuit Court of Appeals or other district or appellate courts.

Similarly, Plaintiff claims in his grievances and appeals that "intentional" delays in mailing his legal correspondence caused him to "lose" two *habeas* cases in this Court in January of 2006. However, neither of Plaintiff's two *habeas* cases pending at that time were "lost" because of delayed mail or any other timeliness issues. In *Antonelli v. Sanders*, 2:05CV00207 WRW, on January 17, 2006, Plaintiff sought and received an extension of time to file his Reply to the Government's Response to his Petition for *Habeas Corpus*. *See* docket entries ## 21- 22. His petition was ultimately dismissed on the merits, not because of any failure to respond. The same is true for his petition in *Antonelli v. Sanders*, 2:05CV00314 WRW, which was dismissed on the merits following the district judge's review of the magistrate's recommendations and Plaintiff's three timely-filed objections and motions.

### I.  Claims S - T

Plaintiff has also sued Defendants DePoorter and Ward, pursuant to *Bivens,* and the United States as well under the Federal Tort Claims Act, for waking him "in the middle of the night" to submit to random urine drug screens, the timing of which he contends are in retaliation for his filing of grievances against DePoorter. Plaintiff does not appear to be challenging the randomness of the testing, but rather the timing, which disturbed his sleep; in his grievances he sought a directive from the Bureau of Prisons that he not be awakened between midnight and six a.m. A urinalysis constitutes a search or seizure for purposes of the Fourth Amendment, and therefore, the searches must be conducted in a reasonable manner. *Spence v. Farrier,* 807 F. 2d 753 (8th Cir. 1986). However, prison administrators are accorded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id., citing Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

Here, Plaintiff is, essentially, challenging the implementation of the Bureau of Prison's policy

and procedure, which calls for "random" testing, by Defendant Ward, who was the officer who woke Plaintiff and conducted the screening. The disturbances actually occurred twice, over the course of two months, and, while Plaintiff contends that Defendant DePoorter was behind the allegedly retaliatory conduct, there are no facts stated in the Complaint (or the grievances and appeals in the exhibits) that plausibly attribute the responsibility to her. Plaintiff has not stated any retaliatory animus attributable to Defendant Ward that would give rise to a claim against him, nor does having his sleep interrupted twice in two months amount to the sort of sleep deprivation that would give rise to an Eighth Amendment violation. *See e.g., Helling v. McKinney*, 509 U.S. 25, 36 (1993). In light of the discrete boundaries set by Judge Holmes's October 11th Order, the Court recommends a finding that this claim be dismissed as frivolous.

### J. Claims W - X

Plaintiff alleges that Defendant Shaver "overcharged" Plaintiff with a Code 108 offense "when it truly was only a 200 level or lower offense, in retaliation for Plaintiff having filed grievances against [Shaver's] cohorts." The offense was for possession of some sort of "tool," and Plaintiff was apparently later exonerated of the charge, because he notes on page 60-B of his Exhibits that he was pursuing the appeal of the grievance despite the "shot" having been expunged. There is no information about what, if any, discipline was imposed on Plaintiff as a result of the charge.

As a preliminary matter, in the absence of any retaliatory animus by Defendant Shaver, who does not appear to have been a target of Plaintiff's grievances, this claim too exceeds the scope anticipated by Judge Holmes in his limiting instructions. Furthermore, any harm suffered by Plaintiff here has already been remedied by the expungement of his disciplinary record. *See e.g. Wycoff v. Nichols*, 94 F. 3d 1187 (8th Cir. 1996)(no due process violation in sanctioning inmate for conduct not prohibited by prison rules when appeal of discipline restored good-time credits because appeal procedure "constituted part of the due process [and] cured the alleged due process violation");

*Ragan v. Lynch*, 113 F. 3d 875 (8th Cir. 1997).

   **K.  Claims AA - DD**

   These claims, which include the previously-unresolved portions of sections AA and BB, address the "conditions of confinement" at the FCI-FC Special Housing Unit and the commissary. Those claims related to the alleged denial of access to the courts have been disposed of *supra* on their merits. What remain of Plaintiff's complaints about the SHU are the absence of timely reviews, the denial of adequate reading material, the failure to deliver grievance forms, and other unspecified "inhumane and unconstitutional conditions."  Because none of this relates in any way to the retaliation claims to which Plaintiff was originally limited, these claims related to the conditions of confinement at the SHU should be dismissed.

   The same is true of Plaintiff's complaints that Defendants McBride and Marquez lock 60 to 90 inmates at a time in the commissary together "for hours at a time . . in retaliation against those who complain . . . including Plaintiff." According to a grievance attachment prepared by Plaintiff and found in his exhibits at 71-B, the commissary door is locked during shopping hours during institutional moves through the hallways.  This may result in 60 to 140 inmates closed up together in the small commissary shopping space, without adequate ventilation among individuals who may have "hygiene concerns," as Plaintiff put it.  And, indeed, it appears from the FCI-FC response provided that Plaintiff's concerns were validly raised and procedures have been modified to address the legitimate safety issues raised by his grievance.  However, nothing alleged even hints that the named Defendants followed the previous procedures with the intention of retaliating against Plaintiff for filing grievances.  *Williams v. City of Carl Junction, Mo*., 480 F.3d 871, 877-78 (8th Cir. 2007)(plaintiff must satisfy the required elements of a retaliation claim by showing that the official's actions were motivated by retaliatory animus); *Technical Ordnance, Inc. v. United States*, 244 F.3d 641, 651-52 (8th Cir. 2001)(no First Amendment violation without a showing of improper motive).

Nor has Plaintiff suffered any actual present harm as a result of the scenario described. Plaintiff has listed several things that *might* have occurred. Fortunately, none of these did occur, and in the absence of actual injury Plaintiff has no standing to file a claim for injury, or retaliation.

### L. Claims EE - GG

These three claims seek damages for property loss: the refund of $3.35 for the unused portion of a copy card purchased at FCI-FC; $45.80 for lost or stolen headphones, stamps, nail clippers, scissors and other personal items that were missing from Plaintiff's room after he was sent to the Special Housing Unit; and 95¢ for a typewriter correction tape that was mistakenly confiscated during a shake-down. Plaintiff correctly characterizes these as tort actions. As such, they are outside the scope of the Court's grant of permission extended in Judge Holmes's October 11th Order, and should be dismissed.

### M. Claims HH - II

Lastly, Plaintiff has added that from "June 20, 2005 onward" Defendants Garcia and Wanzer retaliated against Plaintiff for having complained about retaliation by Defendant DePoorter by "singl[ing] out Plaintiff for harassment, intimidation, degradation, humiliation, in front of the general inmate population . . . ." No further details are provided that might "nudge the claim across the line from conceivable to plausible." *Twombly*, 127 S.Ct. at 1964-65. In the absence of specific harm, a description of discipline, and an explanation of retaliatory animus attributable to these Defendants, this claim, too, is frivolous, and should be dismissed.

For all these reasons,

## IV.  Conclusion

IT IS THEREFORE RECOMMENDED that this action be DISMISSED WITH PREJUDICE for failure to state a claim upon which relief can be granted.

DATED this __12__ day of June, 2008.

_____
UNITED STATES MAGISTRATE JUDGE